UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

JEFFREY L. VANAUKEN,

        Plaintiff,

v.                                                                                             CAUSE NO. 1:21-CV-454 DRL

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

        Defendant.

## OPINION AND ORDER

Jeffrey L. VanAuken appeals from the Social Security Commissioner's decision denying disability insurance benefits and supplemental security income. Mr. VanAuken requests either reversal of the Commissioner's decision or remand for further consideration. Having reviewed the underlying record and the parties' arguments, the court affirms the Commissioner's decision.

## BACKGROUND

Mr. VanAuken filed a Title II application for benefits and a Title XVI application for supplemental security income on October 30, 2019, alleging a disability beginning August 9, 2019. His application was denied initially on January 3, 2020, and again on reconsideration on April 13, 2020. [ECF 11 at 15]. His claims were heard by an Administrative Law Judge (ALJ) in a telephonic hearing on March 18, 2021 because of the extraordinary circumstances presented by the COVID-19 pandemic.

Mr. VanAuken suffers from major depressive disorder and an unspecified anxiety disorder, both considered severe by the ALJ on review [*id.* 18]. In an April 5, 2021 decision, the ALJ found that Mr. VanAuken had the residual functional capacity (RFC) to perform a full range of work at all exertion levels with the following limitations: work that could be learned in 30 days or less with simple, routine tasks; no production rate pace work; tasks in two-hour increments; and occasional interaction

with coworkers, supervisors, and the general public [*id.* 22]. The ALJ concluded that Mr. VanAuken was "not disabled" and instead was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" based on his "age, education, work experience, and residual functional capacity" [*id.* 25]. The ALJ thus denied the petition [*id.* at 26]. This decision became final when the Appeals Council denied Mr. VanAuken's request for review on October 8, 2021 [*id.* 1].

## STANDARD

The court has authority to review the Appeal Council's decision under 42 U.S.C. § 405(g). Because the Appeal Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [the] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4)

2

if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given his age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform work in the economy. *See Young*, 957 F.2d at 389.

Mr. VanAuken presents three arguments against the administrative disability decision: (1) the ALJ failed to evaluate properly and incorporate physical impairments in combination with medication side effects into the RFC, (2) the ALJ omitted concentration, persistence, and pace (CPP) limitations in the RFC, and (3) the ALJ failed to analyze the opinion of Dr. Russell G. Coulter-Kern (the SSA's examiner) properly.

> A. *The ALJ's Evaluation of Mr. VanAuken's Physical Impairments and Medication Side Effects in the RFC.*

Though couched initially as just a challenge to the RFC, Mr. VanAuken advances several points—certain ones that relate to the RFC and others that challenge the ALJ's decision generally. The grab-bag of points, because of their underdevelopment and waning coherence, prove difficult at times to track, but the court takes each issue in turn with careful consideration.

Mr. VanAuken first says the ALJ failed to consider his obesity and erred by concluding that his gait wasn't thereby impaired. Mr. VanAuken cites two medical records, but the ALJ ably considered both records [ECF 11 at 18, 310-11], and it isn't the court's province to reweigh the evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995).

Mr. VanAuken claims that the ALJ erred by discrediting his symptoms based only on the lack of objective medical evidence. But that isn't what the ALJ did. After considering the same evidence that Mr. VanAuken presents now, the ALJ noted that the record did not indicate that Mr. VanAuken had limitations from his obesity or that he could be reasonably expected to suffer from significant

3

limitations for twelve consecutive months [ECF 11 at 18]. Mr. VanAuken has not established on appeal what limitations should have been incorporated into the RFC determination that weren't already.

For instance, the two records cited in this appeal concern Mr. VanAuken's back pain, though the records precede his alleged disability onset date by several months. One documents that he had mild multilevel spondylosis [*id.* 310]. The second says he had lower back pain when he bent back or to the side, though he could pick up 50-pound boxes at work [*id.* 311]. Mr. VanAuken gleans no limitations from these records that undermines the RFC determination. He seems to presume that the ALJ's allowance for medium work, which would include lifting or bending, would be problematic, but these medical records support no such singular view.

The ALJ also considered other medical evidence. For example, an October 2020 medical record documented leg pain that started three days before the office visit [*id.* 500]. It indicated that Mr. VanAuken had recently thrown his back out, but his "back [was] fine" as of the office visit [*id.* 502]. The ALJ also cited the evaluation of Dr. Coulter-Kern, who observed that Mr. VanAuken's gait and posture were normal [*id.* 325]. The ALJ reasonably concluded that no treating source reported a significant limitation from his obesity [*id.* 18].

Rather than show a significant limitation of functions for twelve consecutive months, the record shows Mr. VanAuken had no ongoing or long-term impairments from obesity. Mr. VanAuken has pointed to no evidence that would change that determination. *See Shumaker v. Colvin*, 632 F. Appx. 861, 868 (7th Cir. 2015) ("[The claimant] does not identify any evidence in the record that suggests greater limitations from [his] obesity than those identified by the ALJ, and neither does [he] explain how [his] obesity exacerbated [his] underlying impairments. Thus, even if the ALJ had erred in considering how [the claimant's] obesity affects [his] ability to work, that error would be harmless."). The ALJ capably considered the record evidence and committed no error here.

Mr. VanAuken next claims the ALJ should have performed a credibility analysis on his subjective complaint of back pain, yet his testimony before the ALJ discussed little to nothing about his back condition [*see* ECF 11 at 42, 47-48]. Indeed, his back injury in 2000 at work resolved "many years ago;" and, though he received shots in his back and muscle relaxants in 2005 after an emergency room visit, he cites nothing in his testimony that reflects an ongoing or long-term significant limitation in function from these events or from his obesity. Without testimony in the record on this issue, the ALJ could not be expected to perform a credibility analysis.

Mr. VanAuken next argues that the ALJ overlooked the reason his condition improved—because he quit performing substantial gainful activity before his alleged onset date. He never specifies what condition he means. The only evidence he cites is his testimony that he was fired from Walmart because he missed too many hours—with no health-related reasons seemingly underlying the missing hours. He doesn't point to any medical evidence that shows improved symptoms or a difference in symptoms depending on his workload at the time. The part of the administrative decision he cites discusses his improvement after he stopped taking Xanax. Mr. VanAuken asks the court to trust that his impairments were directly affected by his workload and that the ALJ somehow passed this over. This argument proves undeveloped. A "claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). He hasn't done so. The ALJ thus made no error evaluating his condition on this point.

Mr. VanAuken turns to argue that the ALJ didn't fully analyze the side effects of Xanax. He cites one side effect—a risk of falling—and one medical record that he had a risk of falling at the lowest level in October 2020 [ECF 11 at 499]. This medical record doesn't link Xanax to the fall risk. Rather, this record focuses on Mr. VanAuken's leg pain [*id.* 499-500]. That alone shows no error in the ALJ's assessment. In addition, Mr. VanAuken says July 2020 was the last time he had a prescription for Xanax, and the ALJ considered the drug's effect on Mr. VanAuken, noting he was less sleepy once

5

he quit using it in August 2020. The ALJ thus concluded that his limitation seemed to derive from medication, not mental health issues. Mr. VanAuken hasn't challenged this separate conclusion. The court thus finds no error in the ALJ's evaluation of his side effects from Xanax.

Mr. VanAuken next cites his leg and back pain from October 2020, but he never explains how this information shows that the ALJ erred. Mr. VanAuken merely returns to his gait issues and inability to perform medium work without demonstrating how these medical records put him in a lower work category. The ALJ considered the medical records that Mr. VanAuken cites [*see id.* 18, 500]. Mr. VanAuken has not developed an argument on this point. The court finds no error with the ALJ's evaluation of his work category as it relates to his leg and back pain.

Mr. VanAuken next argues that the ALJ didn't fully consider the impact of his February 2021 ear and sinus infection. He also says the ALJ failed to address that he was addicted to smoking a quarter pack a day, which he claims related to his sinus infection. He does not explain the connection between his smoking habits and his sinus infection. He cites a medical record to support his assertion that he had chronic sinusitis, which the record shows as mild [*id.* 522]. When given the chance to comment on this issue at his hearing before the ALJ, Mr. VanAuken said that his sinus infection was resolved [*id.* 46]. He wants an evaluation of how his ear and sinus infection impacted him long-term, yet he provides no evidence showing a long-term impact. *See Nelms*, 553 F.3d at 1098. All told, he has not identified how this evidence would have changed the evaluation—though it was considered by the ALJ. The court finds no error as to the evaluation of his ear and sinus infection.

In sum, the ALJ committed no error analyzing Mr. VanAuken's physical impairments individually or in combination. No impairments were ignored, or the impairments had "such minimal effects they would not be expected to interfere with the ability to work" [ECF 11 at 18-19]. His "physical impairments he briefly sought treatment for have not resulted in significant limitations of

6

function for 12 consecutive months" [*id.* 18]. Because substantial evidence supports the ALJ's capable work in this case, the court affirms.

  B. *The ALJ's Incorporation of Concentration, Persistence, and Pace Limitations in the RFC.*

Mr. VanAuken claims that the ALJ did not account for his limitations in concentration, persistence, and pace in the RFC and the hypothetical. He acknowledges that the ALJ referenced these factors early in the decision but claims that the ALJ omitted them from the RFC. But the administrative decision proves otherwise. The ALJ limited Mr. VanAuken to "work that can be learned in 30 days, or less, with simple routine tasks; and no production rate pace work" [*id.* 22]. The ALJ also limited him to tasks in two-hour increments [*id.*]. He could have "occasional interaction with coworkers, supervisors, and the general public" [*id.*]. These limitations directly address considerations of concentration, persistence, and pace. *See Cihlar v. Berryhill*, 706 F. Appx. 881, 882 (7th Cir. 2017); *Givens v. Colvin*, 551 F. Appx. 855, 862 (7th Cir. 2013). These same limitations were described in the hypothetical [ECF 11 at 55]. Mr. VanAuken hasn't alleged that these limitations are unsupported by the record—just that they did not appear in the RFC. On that point, he is wrong.

Mr. VanAuken also complains that the ALJ failed to analyze the effects of PTSD, trauma, and triggers. The ALJ did not reference PTSD by name, though the ALJ referenced the medical record diagnosing Mr. VanAuken with chronic PTSD multiple times [*see id.* 20-23 (citing 328)]. The ALJ concluded that this evidence and Mr. VanAuken's testimony did not suggest that he had extreme or marked mental limitations [*id.* 20]. Dr. Coulter-Kern's opinion bolstered this conclusion [*id.*]. Further, the ALJ looked at several medical records that showed that Mr. VanAuken functioned well despite any mental condition [*id.* 21]. The limitations described in the RFC were determined "with additional mental restrictions that limit stressors that would aggravate the claimant's symptoms and accommodate any interference with pace, related to panic or anxiety" [*id.* 24]. The ALJ thus incorporated Mr. VanAuken's mental conditions—including his anxiety and stressors that would cause

7

a panic—into the RFC. Again, Mr. VanAuken is only challenging the RFC limitations with this argument. In another undeveloped argument, he has not shown the court what additional limitations should have been included or how they relate to his PTSD. Yet the ALJ included language that addresses his issues with panic, anxiety, and stressors. The ALJ didn't err.

In a similar vein to his PTSD complaint, Mr. VanAuken argues that the RFC should have accounted for the quality of his interaction with others. The ALJ limited him to occasional interaction with supervisors, coworkers, and the general public. To support this determination, the ALJ considered the following statements that Mr. VanAuken made to Dr. Coulter-Kern: that he may get anxious once or twice a month, that he could go to the grocery store without difficulty, and that he was in a depressed mood more often than not [*id.* 23]. Further, the ALJ considered that Mr. VanAuken held a job at McDonald's until he experienced dizziness from a sinus infection; that is, his mental limitations did not stop his ability to work successfully [*id.*]. Mr. VanAuken does not clarify what limitation should have been added or what limitation was ignored. *See Shumaker*, 632 F. Appx. at 868. Therefore, the court finds no error in the RFC or the hypothetical as to his social limitations.

C.  *The ALJ's Evaluation of Dr. Coulter-Kern's Opinion.*

Finally, Mr. VanAuken argues that the ALJ did not properly analyze and weigh Dr. Coulter-Kern's opinion. This argument has no merit. Mr. VanAuken claims that the ALJ disregarded Dr. Coulter-Kern's opinion and pitted it against Mr. VanAuken's reports. He claims that the ALJ inappropriately substituted her own view of Mr. VanAuken's mental impairments for Dr. Coulter-Kern's view. But Mr. VanAuken does not enlighten the court as to where in the decision the ALJ committed such errors.

And a review of the decision shows the opposite. The ALJ noted that "Dr. Coulter-Kern's opinions tend to suggest the claimant does not have marked or extreme limitations" and "Dr. Coulter-Kern's opinions are generally consistent with the claimant's testimony and treatment notes written by

his own providers" [ECF 11 at 20]. The court finds nothing in the decision discounting Dr. Coulter-Kern's opinion or pitting it against Mr. VanAuken's reports. Nor does the decision show the ALJ ignoring the opinion, as the ALJ cites Dr. Coulter-Kern throughout the analysis and uses the opinion to support her conclusion [*see id.* at 20-23]. The court finds no error in the ALJ's treatment of Dr. Coulter-Kern's opinion.

## CONCLUSION

Accordingly, the court DENIES Mr. VanAuken's request for reversal or remand and AFFIRMS the Commissioner's decision. This order terminates the case.

SO ORDERED.

November 4, 2022

*s/ Damon R. Leichty*
Judge, United States District Court